Before we begin our argument this morning, we have four admissions. I have the pleasure of moving the admission of my four law clerks from this year who have done an excellent job and kept me on the straight and narrow and I'm very appreciative. They have, each one of them, been terrific. So, in no particular order, I first move the admission of Anthony Shea, who is a member of the bar and has good standing with the highest court of New York. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. So, Judge Taranto, I think you and Judge Hughes have to act on the motion. Second, I move the admission of Giovanni S. Zorman-Gonzalez, who is a member of the bar and has good standing with the highest court of California. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. Again, granted. We'll see how the rest go. Two for two, sir. I move the admission of Alexander Ryan Traziak, who is a member of the bar and has good standing with the highest courts of Texas and the District of Columbia. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. Granted once more. Okay, and then finally, I move the admission of Jimmy J. Zwang, who is a member of the bar and is in good standing with the highest court of Massachusetts. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. I think a clean sweep. Yeah, a hit for the circuit, granted. So, the four of you should take the oath of office. Please stand and raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America?  I do. I do.     I do. I do. I do. I do. I do. I do. I do. I do. I do. I do. I do.  I do. Mr. Williams. You're welcome. Welcome. Welcome. Welcome. Welcome all of you to the bar and again, thank you for all of your excellent work. Now, having done the easy part of this morning's work, we turn to the cases. The first of these is Number 16-1742. Net list Inc. versus Diablo Technologies, Inc., Mr. Lloyd. Thank you, Your Honor, and may it please the Court. A single claim construction error infected all the Board's unpatentability decisions and those decisions should not stand. What exactly is the claim construction that Net List requested in the Board proceeding? We requested that the Board construe selectively electrically coupled as electrically coupling in response to a selection. We raised that construction at the institution stage during the trial and that's the construction that we've asked the Court here to adopt as well. And on the merits of that, the Board's construction is wrong for any of several reasons. I'm not really seeing that there's any clear difference between that and what the Board did. Did the Board explain that there was a difference between the two? The Board rejected our argument or our claim construction consistently, Judge Dike, and the Board instead adopted a different construction. And the core of the dispute here is about how the Board ultimately understood its construction. The Board understood that selectively electrically coupling can be accomplished by simply sending a signal to a memory device to activate or deactivate that memory device. And we consistently at the Board challenged that interpretation and told the Board that selectively electrically coupling could not be accomplished when you had a memory device that was permanently electrically connected to other parts of your computer system. The Board, in adopting its construction, got it wrong because the Board focused on different concepts. For example, the Board focused on selecting between components. That was the first part of the Board's construction. But the claim language doesn't say anything about selecting components. Indeed, the claim language already tells you the relevant components. A single instance of selectively electrically coupling occurs between a memory device data signal line and a common signal line. Those are the relevant components. And the circuit isn't selecting between those components. The circuit is electrically coupling those components. The Board also got it wrong because the Board focused on transferring power or signal information. That's the other part of the Board's construction. But the patents use a different term for that. They use the term transmit. That's in Claims 6 and 7 of the 150 patent and also in the specification. Would I be right in understanding your position that the difference between what the Board did and what you're doing is something like... What you're doing is creating a path along which certain things can happen like transmitting signals or transmitting power. And the Board took the view that it's not creating the path, but it's actually the transmission over a path. I think that's mostly right, Judge Trano, with the caveat that the word path can be a little bit loose. You can have electrical coupling even if there isn't necessarily current transfer across a wire. But that's right. An electrical coupling is about creating the electrical connection through which signals might be transmitted. But the Board got it wrong because the Board focused on that end result of transmitting. But an electrical connection exists even if nothing is ever transmitted. You know that because that's not only the way that claims use the language of coupling, but that's what the specification shows at columns 6 and 7 of the 150 patent. This is at appendix 166. And the Board's misunderstanding... You say there doesn't have to be a switch, you said. So I'm not sure, apart from a switch, what it is that in your view would satisfy your construction. That's right. Our position is not that a switch is required, but our position is that you can't have selective electric coupling, Judge Dyke, when the signal lines... Remember the claims focus on the signal lines. Electrical coupling is about coupling the signal lines. If those signal lines are permanently connected, you cannot selectively electrically couple them because you already have a connection. There's always a connection. That's what the Board thought that that was enough if I'm simply at the end of those lines, you have these memory devices, and I simply say, this memory device, your turn to transmit, and other memory devices don't transmit. The Board focused on that. What would be an example of something that would satisfy you that's not a switch? So one example that the specification gives is a multiplexer. A multiplexer is an electrical component where you might have four signal lines coming in, there's a control line, and then the multiplexer will electrically couple one of those four signal lines, say, to the output. That's one example. And one would not call that multiplexer a switch? I don't know that there's anything in the record either way, whether a person of skill in the art would think of that as a switch. But part of the problem here is that the word switch is, and there's no construction, it's a loosely defined term, but the core concept is about coupling, electrically connecting these lines. And this goes, it's not just, this isn't just a semantic difference between the Board and us. Did you suggest to them that a switch or multiplexer was what was required? No, what we suggested is what is required is electrically coupling in response to a selection. And when the Board adopted at petition stage a construction that said, you can have electrical coupling when you have permanent hardwired signal lines, we consistently attacked that and said, that's not right. Well, I don't understand how they're supposed to understand your position if you didn't tell them that you're talking about a switch or a multiplexer or something like that. You seem to have given them a somewhat vague claim construction, and now on appeal you're suggesting that you're refining it to say it has to be a switch or a multiplexer, but you didn't tell that to the Board, right? So, Judge Dyke, I disagree in at least two ways with that. First, there was no confusion at the Board about what our position was. You can read what the Board said at Appendix 29, where the Board recognized that we were saying the exact same thing that we're saying now, that you can't have selective electric coupling when you have permanent connections. So, Appendix 29, that's in Volume 1 of the Appendix where it's the back of the blue brief. Right at the top of the page, the Board responds to this issue that we're discussing now. They say, additionally, we are unpersuaded by patent owners' argument that hardwired data signal lines, such as that taught by Meadey, cannot be electrically coupled in a selective fashion. And we did, Judge Dyke, the other way I disagree with what you said is we did offer a switch as one example of selective electrically coupling. The point is simply that we're not trying to say that a switch is the only way to selective electrically couple. And there's no requirement that we disclose all potential embodiments in our patent. We simply need to disclose enough to satisfy the written description and enable requirements. Can you say something about the reference in Column 8 to the data buffer? Is that consistent with your view? Right at the bottom of Column 8, certain embodiments, the memory module, operates as having a data path rank buffer, which advantageously isolates the ranks of memory devices or modules. That sounds like it's doing coupling. Is that? Not much is made. Maybe nothing is made in the red brief of that. And I think you have a footnote in your reply brief pointing that not much is made of it. But I guess I want to understand it better. So, again, I think the fundamental dispute is that electrical coupling can't be accomplished when you have permanent electrical connections. So a buffer may. Again, there hasn't been a lot of development on this, Judge Tronto. And so to the extent that were an issue the other side thought were important, it was their burden to focus on that. A buffer could be one way to isolate things. But again, here, the claim language is more particular than simply isolating. And it's more particular than simply coupling. It's selectively isolating a load in the load cases. So it would come down to, is a buffer actually configured in a way within a circuit to selectively isolate a load? And is it configured in a way that it's selectively electrically coupling the relevant data signal line? So buffers may be a part of that, but I think it would depend on the circumstances of how the circuit is configured. And Judge Dyke, the dispute that we raised, it is the same dispute at the board. And it goes to the core of what the invention is about. What the board said was selectively electrically coupling is what the prior art did. If the board had looked at the specification, it would have understood that. But the board's analysis on the claims, it bypassed the specification. It said, well, the specification doesn't expressly define selectively electrically coupling. And it went straight to technical dictionary definitions. But the specification is the single best guide to understanding the claims. And here, and we walked through this in the blue brief, if you look at the prior art memory device in figure two, it operates in the same way that the board thought was selectively electrically coupling. You have permanent electrical connections. We reproduced this on page 19 of our gray brief. Side by side. In the prior art, you had a memory device, and it was permanently electrically connected to the rest of the system. And the problem with that type of connection, the specification details this at column six, is that the system is always exposed to the loads. When there is no selective electric coupling, the system will always be exposed to the loads of both memory devices. That was okay with the prior art. Because the computer system knew how many memory devices to expect on a module. The computer system was designed to handle, say, eight memory devices on a module. So if all of the devices are being coupled, the system can handle that load. But our invention was about doubling or quadrupling the number of memory devices on a module beyond what the system was designed to handle. And if you configured it in the way that the board thought, in the way that prior art shows... Didn't Klein do that in the prior art? So Klein did disclose putting more memory devices on a module. But Klein did not disclose this aspect of the invention, which was about selectively coupling or isolating loads. In fact, what Klein did was the same as the prior art. I thought it did. I thought it showed switches where you could turn it on and off. That's right. I was actually thinking of a meaty... Klein does show switches, but switches are neither here nor there. Our claims don't require switches. Wait, wait, wait. You said they don't require switches, but they do cover switches. They cover switches configured in the specific way that the claims detail. The claims here are very specific. There has to be selective electric coupling between a device data signal line and a common signal line. There are switches in Klein. We don't dispute that. But look at what the switches do in Klein. That's at Appendix 1630. This is for one embodiment of Klein. But if you look at the description... It's Volume 2, Judge Stein. What page? 1630. It's about a fifth of the way through Volume 2. This is showing one embodiment in Klein, but if you read the description, it applies to all. Yes, there are switches here, but if you look at how the switches are configured, the switches are configured to couple or decouple an entire memory module. That block that says memory on the right, that's an entire memory module. That's not an individual memory device. That's not what our claims require. It also wouldn't work for our invention. I thought there was testimony that the switches in Klein were disclosed to apply to individual memory devices, and not just the module. I think there was testimony that the switches could be put on a memory module. In some instances, the switches could actually be built into the memory devices. But the way the switches are all configured, which that's what the claims are about, is how the circuit is configured, it couples or decouples the entire module. We have to deal not with your argument as to what Klein discloses, but with, since this is really complicated stuff, with what the testimony and expert declaration said about this. And I thought the petitioner had expert testimony that Klein disclosed using the switches to apply to the individual devices as well as to the module. Am I wrong about that? I'd have to look. I didn't see that in the red brief, Judge Dyke. But we also have expert testimony saying the same, appendix 2490. And I agree that this is complicated stuff, which is why this issue of whether Klein would disclose under our construction isn't properly before the court. The board made all of its findings based on its construction. And it consistently rejected our expert testimony as based on our construction and not the board's. So to the extent that there's factual disputes about what Klein discloses and whether it discloses under our construction, that's an issue the board needs to resolve in the first instance. If I may, I'd like to reserve the remainder of my time, but I'm happy to take it. My question is whether there's conflicting testimony as to what Klein shows in this respect. Yes, so appendix 2490, that's our expert. So where am I supposed to look here? So in paragraph 63... I'm sorry, I gave you the wrong site, Judge Dyke. It is at appendix 21... let's see. Yes, appendix 2122, I'm sorry. Okay. So this is starting at the bottom of the page, Judge Dyke. This is our expert in his deposition. He says, well, actually, in all the shown embodiments that can selectively decouple or sort of decouple a whole memory module, that is the granularity. And then at the bottom of appendix 2123, about line 19, he reconfirms that testimony. So that is why I'm going to say that it decouples or couples an entire memory module, because that embodiment meets the objective of the summary of the invention talking about Klein. Okay. Am I misreading the next sentence that says one could argue, I suppose, if you went to figure 10, there's a possibility of decoupling a memory device? So that is what he says, and if you look at the figure 10, it shows switches being built into the memory devices themselves. That's not consistent with our claims for two reasons. One, it has to be the circuit that selectively electrically couples, and the claims are written in a way that's clear the memory devices are different from the circuit. But also, even when it's built into the chip, it's still coupling all of the devices at the same time. Thank you. Okay, we'll give you two minutes for rebuttal. Thank you, Judge. Mr. Moreno. Good morning, Your Honors, and many pleas to the Court. I fully ask this Court to affirm the Board's rejections of all three IPRs on three separate grounds. The first and most important one, as we just heard from Nicholas, the Board actually made determinations on what was the prior art that was being used to invalidate. And those determinations went beyond just applying the Board's own construction. And in fact, as Your Honor asked during the next part of the argument, it did specifically address whether the combination of prior art, in fact, included a switch. And the Board had to do that, because there were two dependent claims, 17 and 33 in the 150 pattern, that expressly required a switch. And the Board determined factually that, in fact, the switch was the present element of that combination. And I'm going to focus on the combination of Amede and Klein, just to keep things simple. So in Amede and Klein, regardless of whether their net risk arguments are correct on claim construction, there is the complete circle that's required by the claims, including the critical switch element, that net risk admitted is not necessarily required, but it would meet the claim limitation of selectively electrically coupling and selectively isolating the other in the rest of the claim. But their argument appears to be that while Klein discloses switches, it's a switch which acts on the module as a whole and not the individual device. First of all, I don't know that that argument was answered factually. They pointed to the wrong figure in Klein. That's not the figure that the Board relied upon. The figure relied on figure six of Klein, which is at appendix page 1632. Which I actually think was part of what Dr. Session was deposed about. And on figure six, you can clearly see that there are transfer gates, 64, each one of which is connected to a memory device which are labeled 62 in that figure. And then there is a dash box around all of those solid line boxes and that's the memory module in that figure. In figure six, clearly, there are individual switches for each memory device and multiple memory devices on a single memory module. I'm sorry, where does this show there are individual switches? The transfer gate 64 are those the switches? And then you see the memory module 62. And if you read the specification, it actually makes it clear that those are separate switches for each of the memory devices. Did your expert explain that? Yes, he explained that in his declaration. He gave you that page. It's in his supplemental declaration. It's in the appendix at 8525, paragraph 41. And it's figure three and four. And I will also refer to paragraph 42. 85 what? So it's 8525. Paragraphs 41 and 42 address this particular aspect of Klein and you will see that in paragraph 42 there's an express reference to figure six and it refers to the memory device and it says that Klein teaches that control signals for controlling a switch may be generated on modules in figure six. And there's other portions of this declaration. Where did the board make findings about this specific issue? That's exactly my next point. So if we look back at actually the very same page in the board's decision, the council refers to page 29 of the appendix. And I'm also going to be referring in a moment to page 32 of the appendix, but let's start with 29. Council refers to the first half of the page where the board addresses this issue of what a media teaches and rejected netlist argument that hardwired lines are uncovered. But then in the very last sentence they said, furthermore, Houghton Tuners declared on Dr. Sessions that if I declined discloses the use of MOSFET switches i.e. data bus switches for decoupling select memory circuits from the data bus. So if netlist arguments were correct the board was just applying its own construction. Right, but that sentence doesn't specifically address the distinction between decoupling individual devices within a module and decoupling the entire module. At least as I look at columns, there aren't columns I guess in Klein, but page 3 of Klein where the transfer gates 64 are discussed in figure 6 I can't quite tell whether all the transfer gates are decoupled, thereby decoupling the entire module. There's at least one sentence that says that. That is correct. This paragraph doesn't address that issue. My argument is slightly different. Let me just go back to that point which I honestly don't think was raised on appeal. That's why I'm focusing on the earlier point. First, the board clearly was cognizant of netlist argument that a switch might be required. They made an express finding that a switch was disclosed in the combination. If you then go on to page 32, which is actually the finding of the board where they say they find these claims obvious in light of the combination of Amidi and Klein. This is on page 32. It's the first full paragraph. They set forth that conclusion. Then they tell you exactly what the combination is. They say they're persuaded that Amidi teaches a circuit with a logic element, a register, and a PLL. Those are the structural elements of the circuit. We're also persuaded that the teachings of Amidi could have been implemented using the common data signal line and switch system disclosed in Klein so that selective electrically coupling the first data signal line to the common data signal line. That's the disputed element. They are relying not on Amidi alone but on the circuit of Amidi which is multiple memory devices on a single board with all the required circuit elements modified to include the transfer gates of Klein. For example, in figure six. The actual combination that the board applied wasn't Amidi and Klein separately. It was a combination. How do we know to read it that way given that two pages earlier the board said pretty clearly that hardwired data signal lines meet the selective electrical coupling? I think they're making a further finding that in the very sentence that you just referred to they then say furthermore, Dr. Sessions admits that Klein, the secondary reference, expressed the disclosed switches. Then when they do the combination they point to Klein. Again, it didn't admit that it did it at the device level. Which reference do we get the fact that they're coupling devices rather than whole modules? Is it Amidi or is it Klein? Klein is what you just walked us through. Let's assume that I find that a little unclear. Is it in Amidi too? Yes. The naturalist argument is in Amidi there are data lines that go to each individual memory module memory circuit within the memory module and there are no switches. Klein is supplying the teaching of switches. The switch in Amidi gets you to the devices. Where's your testimony on the fact that Amidi has that structure? I want to understand what structure you're referring to. The device that they coupled devices not the entire memory. I'm trying to get the terms right here. I forget what the patent used. There's the bigger memory module. There is testimony throughout Dr. Draganathan's declaration and in the board's description where they address what Amidi teaches. For example, Amidi if you look at appendix page 21 and 20 those are the board's findings on the Amidi reference. They first walk through the elements of the claim and as the court might recall the circuit requires a register a CPLD and a PLL those are shown in figure 4A on page 20 of the determination. Then they go on to the next page on page 21 they show you figure 6A of Amidi that has the connections between the CPLD and the module connector which then goes to the memory controller. By the way, on the previous figure This is very difficult and it seems like at this point we're trying to figure out whether even under their construction the board would have affirmed but it's very unclear to me this language you're pointing to whether it's specifying the difference between devices or modules. The last sentence of that paragraph right before to overview of clients says Amidi explains that system chips select signal control the ranks of individual memory modules Do you understand that word module to be different than device? The word module is different than device. There is a single module shown in Amidi and that's the one in figure 4A. There are not multiple modules. Everything in Amidi that the board relied on is depicted on figure 4A which is a single module which is this box labeled 400. All of these memory devices 404 that you see on the top line of that circuit those are all individual memory devices on the same memory module. The connections that are discussed throughout Amidi are always referring to the same module. Now, if we go back to the board's decision on pages 22 and 23 that's when they address figure 6 of client. That's the same figure I referred you to. In that figure again you see all those memory devices labeled 62 are connected to the transfer gates 14. The board relies expressly on that figure. Figure 6 not the figure that council cited in its arguments that that figure applies to all the environments. No. It is inclined and expressed environment figure 6 that has multiple memory devices connected through transfer gates to the common data bus. That's what the board was looking at when it made its determination of obviousness of the Amidi plus Klein combination. I would also submit... Can I just double check? Is there something in this passage describing Klein that says there are there clearly are multiple memory devices in the stack. Is that 62? Correct. The transfer gates basically turn them on and off simply making a disconnect between the whole group of them on the module and the rest and the data line. I'm not seeing anything that at least not in a way I can understand gets at the device specific issue. If you look on page 23 the very last part before the section titled it says according to Klein the integrated circuit and transfer gate output are connected to data buffer registers. I think in that case you're referring that's the other side. Can I just ask at the global level why doesn't it make sense if we set aside the board's construction to send it back for the board to sort out what seems like a fairly complicated set of issues not so much about Amidi but about some of the other references and not just Klein? In the first instance because quite honestly that wasn't raised on appeal. The only issue that was raised on appeal is the claim construction. They didn't dispute any of the board's findings. I think what we're talking about now is presuming that the board's claim construction is wrong and still trying to see whether it comes out the same way. If we can't figure out that it comes out the same way then shouldn't we send it back? You're arguing lots of complicated stuff to us about what Amidi and Klein teaches based upon the board's opinions which it seems to me vague and your explanation of the drawings but you haven't pointed to specific expert testimony particularly discussing this figure from Klein we've been talking about. Is there anything more on that? In the supplemental declaration Dr. Jagannath goes through this in detail. It says that figure in Klein teaches that the transferred gates can go to individual memory devices. Where? Could you show us that? That was one of the issues that frankly came up during the trial before the PTAS. I'm confident that was presented. While we're looking for that citation let me get to my second argument and I think this is a point that might have come up in the argument already. I think the dispute that Netflix raised while it's being characterized as a dispute of Klein construction appeal was really a dispute on whether the plain meaning construction they proposed and the board's construction actually applied to the references. That is not a Klein construction dispute. That is a factual finding for the board to make and that is not reviewed in all. And I think Netflix sides Well it depends on how you view the construction. If you view the board's construction as your friend does then the board's construction concentrates on selecting the memory device not electrically coupling or decoupling from that memory device. And it seems that there is a distinction there in the patent. Maybe the whole point of selectively coupling or decoupling electrically is to activate that device but it has the additional purpose at least from their arguments and their patent and specification of reducing load and things like that. Whereas if the line is always electrically connected but you just use the selection from this prior art to go in and get data from it, it's different than being electrically isolated. I would like a couple of points on that. If I've got the science wrong, I'm sorry. I think you've characterized the argument correctly. There are two problems with that. And I think there was a question asked during counsel's argument whether coupling simply creates the path and then the transmission of the signal happens thereafter. The answer is no because the claim requires electrical coupling not just coupling. Electrically, as the board construction says actually requires transfer of electrons of electricity. That's the electrical coupling. It's like a switch. If I turn the switch on, there is electrical flow. If I turn the switch off, there is no electrical flow. So it's operation of the circuit. It's not just creating the path or not. How do we know that? We look at the structure of the claim. In claim 15, we have a circuit with three required elements. The logic element, the register, and the PLL. It says wherein the circuit is configurable to and one of the things it's configurable to do is selective electrical coupling or selective isolating. The phrase that we're construing here is part of the operation of the circuit. It's not part of the structure of the circuit. And what Nestle is arguing is really they want to add a structural requirement either a switch or some other type of device being required to perform that function. But the inventors knew how to set forth structural limitations in the claim and they knew how to set forth functional limitations and they chose to include this sentence in the functional limitations. Do you have the reference to the testimony? I think the best one here is on appendix 1285. Which volume is that? It's in volume one I believe. Okay. And that's the very beginning of paragraph 86. That's Dr. Jagannathan's testimony. The switch was stopped by Klein electrically coupled data signals from a selected memory element not a memory module to the common data signal bus and do so in response to the input signals received. So he's actually testifying. How do we know memory element means memory device and not memory module? Because in the paragraph before when it's talking about memory device it says memory device. And in the sentence before that it uses memory element presumably to mean something different. So he also says in that same he doesn't address it squarely is the answer. But in the same paragraph he says one ordinary skill would understand that decoder is a logic element. Element as its ordinary meaning means one thing. So I think in this you're talking about one of the things in the figure. But it could mean one module or one device within the module. I wouldn't read it that way to be honest. It says it's construed in section 3C paragraph 15 and 16. Where is that? It says on page 1285 one ordinary skill in the art would understand that decoder is a logic element as construed in section 3C. This is page 1230 and 1231. Yeah, so there is on page 1231 there is a definition of logic element. An element that performs some kind of logic function or an element that comprises a logic circuit. So it's suggesting the word element usually is used to refer to an individual component not to a whole memory module. I agree that 62 I know but how does it relate to the testimony? This is from Klein. What does he say in the testimony? In the actual body of the patent for Klein Is that the patent for Klein? They use the word element to describe the memory device as 62 and that is in paragraph 33, page 1637 of the appendix and I think that makes that point clear. So the memory elements are 62 which are the blocks in figure 6 that I was referring to. So now we know that those transfer gates are each one for controlling a specific memory element or memory device 62 in figure 6 of Klein. That's part of the testimony that the board had available to it. When it made the determination in the 882 that in fact the combination of a medium one memory module with multiple memory devices that has all the elements of the circuit but for what Netlis argues is a requirement potentially for a switch or some other kind of device to decouple and couple the lines selectively the board took the teaching of Klein of MOSFET switches to modify the immediate figure in the middle of the data lines to provide a switch for each memory device and that is the determination the board made. I think we're about out of time. Thank you. So Mr. Lloyd if the petitioner's expert said that Klein showed control of the individual devices and not just the module was there testimony to the contrary by your expert that testimony that we looked at earlier didn't seem to contradict that? I think it does contradict it Judge Dyke because again the testimony that was just presented here went to is the switch connected to the memory devices but again our claims are more specific. Our claims require selectively electrically coupling a device data signal line to a common signal line and what Klein shows even if switches are connected to individual memory devices there's no disclosure of operating those switches in a way to selectively electrically couple the individual devices. On the figure 6 for example Where does your expert contradict this? Say what you just said. So one is the testimony we read before where what he said is that Klein operates the switches at the module level. But your expert seemed to concede that maybe it also shows operating with respect to individual devices. No, I don't think that's right. Let me pull it up. Over here. And it's 2122. Well it actually in all the shown embodiments that can selectively decouple it's decoupling a whole memory module. That is the granularity. So he's not talking about necessarily whether the switches are connected to individual memory devices. He's talking about how the coupling or decoupling operates. And it's operating at the whole memory module level. But then on the next page in the sentence that Judge Hughes referred to he says well yeah one could argue I suppose if you want to figure 10 there's a possibility of decoupling a memory device. That's right. So there is an embodiment where the switches are built into the memory devices and that certainly creates the possibility as he admits of coupling or decoupling the devices. But then he continues on at the end of the day it decouples or couples an entire memory module because that's the embodiment that meets the objectives of the summary of the invention. Is what you're saying that the difference from what he's describing here in your invention is the switch incline is in the memory module itself to the extent it can control devices and therefore it's not shutting off the power from the controller level which is where you're shutting off the power from? I think maybe slightly differently from that Judge Hughes it's not necessarily about where the switches are located or even what they're connected to but it's about whether the switches selectively couple a signal line from the memory device to a common signal line. And the reason that matters Wait let me just make sure I've got this. So under that explanation even if Klein selects a memory device your view is it's not uncoupling or coupling to the common signal line. The common signal line is still either is all on. Even if Klein has switches connected to individual memory devices, I think that's the only part of what you said that I'm not sure about even if it has switches connected to individual memory devices it's coupling or decoupling all of the devices at the same time. That's what our expert said in the paragraph that you pointed to, paragraph 35 it's not particularly clear That's not what he says on line 13 he says you could argue I suppose there's a possibility of decoupling a memory device I agree Judge because of where the switches are placed there is a possibility but he doesn't say that's how Klein was Everything we're talking about, these are factual issues that the board simply never reached. All of its findings were under its construction and on appendix 32 the page that my counsel on the other side focused on the very next page, appendix 33, the board discredits our expert for relying on our construction and not the board's. These are issues that the board should reach in the first instance. There are factual disputes on this and so we ask that the court vacate and remand. I think we're out of time. Thank both counsel. The case is submitted.